Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| TELESIA WALTON COLÓN Y EDDIE MONTAÑEZ NIEVES Recurrido v. ESTADO LIBRE ASOCIADO DE PUERTO RICO; MUNICIPIO DE DORADO Peticionario | TA2025CE00003 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón Caso Núm.: D DP2008-0344 Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas[1], la Jueza Rivera Marchand y la Juez Aldebol Mora

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece ante nos el Municipio de Dorado (Municipio o parte Peticionaria), y solicita que dejemos sin efecto una *Resolución y Orden* emitida el 2 de junio de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón (TPI o foro primario).[2] Mediante el referido dictamen, el foro primario ordenó al Municipio a pagar la suma de $150,000.00 más los intereses legales aplicables ascendientes a $22,687.50, para un total de $172,687.50 en cumplimiento de la *Sentencia* emitida por el foro primario, el 11 de marzo de 2020. Además, el Municipio procura la paralización de los procesos ante el TPI, pendiente a la adjudicación de la presente causa.

Por los fundamentos que expondremos a continuación, denegamos tanto la expedición del auto de *Certiorari,* así como la solicitud de paralización de los procedimientos ante el foro primario.

---

[1] Véase, OATA-2025-115.
[2] Apéndice, Entrada 2 SUMAC.

Número Identificador

RES2025 _____

# I.

El 7 de abril de 2008 la Sra. Telesia Walton Colón (señora Walton Colón o recurrida) y el Sr. Eddie Montañez Nieves (señor Montañez Nieves o recurrido) presentaron la demanda de epígrafe en contra del Estado Libre Asociado de Puerto Rico (ELA), como patrono del Centro de Diagnóstico y Tratamiento de Dorado (CDT), el Municipio de Dorado y su aseguradora, identificada con un nombre ficticio (en conjunto demandados). El Municipio instó una demanda contra tercero para imputar responsabilidad al Presbyterian Community Hospital (PCH). En esencia los recurridos solicitaron resarcimiento por los daños morales resultantes de una negligencia de los paramédicos adscritos a la Oficina Municipal para el Manejo de Emergencias (OMME), quienes transportaron a la señora Walton Colón (quien estaba embarazada) al CDT de Dorado, en lugar de llevarla PCH, donde le practicarían una cesárea. Responsabilizaron a los demandados por los daños sufridos ante la muerte de su hijo por nacer y por la histerectomía subtotal a la cual fue sometida la señora Walton Colón.

Luego de varios incidentes procesales innecesarios pormenorizar, y celebrado el juicio en su fondo, el TPI emitió una *Sentencia* en la que declaró con lugar la demanda.[3] En esta determinó que, el Municipio y su aseguradora eran responsables de los daños en un 75% y PCH en un 25%. Así, pues, los condenó a pagar las cantidades de $500,000.00 y $200,000.00, a favor de la señora Walton Colón y el señor Montañez Nieves, respectivamente, por concepto de indemnizaciones por sus sufrimientos y angustias mentales.

Inconforme con lo anterior, el 10 de julio de 2020, el PCH presentó una *Apelación* (KLAN202000370) ante esta Curia

---

[3] Apéndice, Entrada 15 SUMAC.

solicitando que se revocara la referida *Sentencia* dictada el 11 de marzo de 2020, notificada el 3 de junio de 2020. Por su parte, el 22 de septiembre de 2020, el Municipio instó su *Recurso de Apelación* (KLAN202000748) ante este tribunal y solicitó que se dejara sin efecto la referida *Sentencia.* En atención a ello, el 15 de diciembre de 2020, ambos recursos fueron consolidados, y mediante *Sentencia* emitida el 28 de febrero de 2022, un panel hermano desestimó el recurso instado por el Municipio por falta de jurisdicción ante su presentación de forma tardía y en referencia al recurso instado por PCH, confirmó el dictamen apelado. El correspondiente mandato fue expedido y notificado el 4 agosto de 2022.[4]

Ante el incumplimiento de la *Sentencia* por parte del Municipio, el TPI emitió una *Orden de Ejecución de Sentencia y Embargo de Bienes* en contra del Municipio y su Aseguradora Admiral Insurance Company (Aseguradora).[5] No obstante, el 18 de enero de 2023, notificada el 20 del mismo mes y año, el foro primario mediante *Orden* dejó sin efecto la referida *Orden de Ejecución de Sentencia y Embargo de Bienes.*[6] Así, pues, anuló el mandamiento en contra de la Aseguradora por falta de jurisdicción sobre esta y emitió una nueva *Orden y Mandamiento* en contra del Municipio de Dorado eliminando a Admiral Insurance.[7] En atención a lo anterior, la parte Recurrida presentó *Moción de Reconsideración*, sin embargo, el TPI la declaró no ha lugar y, reiteró la orden emitida el 18 de enero de 2023.[8]

Por su parte, el 5 de abril de 2023, la parte Recurrida presentó un recurso de *Certiorari* ante este tribunal (KLCE202300371) y solicitó una revisión de la *Orden* emitida por el foro primario el 18

---

[4] Apéndice, Entrada 16 SUMAC.
[5] Apéndice, Entrada 17 SUMAC.
[6] Apéndice, Entrada 21 SUMAC.
[7] *Íd.*
[8] Apéndice, Entrada 25 SUMAC.

de enero de 2023. Mediante *Resolución* emitida el 27 de abril de 2023 desestimamos el referido recurso por falta de jurisdicción.

Luego, el 21 de agosto de 2023, la parte Recurrida instó ante el foro primario *Moción Solicitando Ejecución de Sentencia y Embargo de Bienes para el Pago de Sentencia,* por la suma de $630,656.46, a lo que se opuso el Municipio el 6 de septiembre de 2023.[9] Evaluadas las posturas de las partes, el 12 de septiembre de 2023, mediante *Orden,* el foro primario reiteró su determinación del 18 de enero de 2023 sobre la ejecución de sentencia ordenada en contra del Municipio.[10]

Así las cosas y sin acreditar cumplimiento del dictamen, el 25 de marzo de 2025, el Municipio presentó ante el TPI una *Moción Informativa y en Solicitud de Toma de Conocimiento Judicial de Plan de Pago.* Informó que, el Departamento de Justicia había autorizado el plan de pago de la *Sentencia* desglosado en cuatro (4) plazos a razón de $47,047.09 por cada año fiscal a partir del 2025-2026. A lo antes, se opuso la parte Recurrida el 27 de marzo de 2025.[11]

Por su parte y atinente al recurso ante nos, el señor Montañez Nieves solicitó al foro primario que ordenara al Municipio a pagar la *Sentencia* cuando entrara en vigor el nuevo presupuesto y que, de ser necesario, se señalara una vista evidenciaria a los efectos de determinar la razón por la cual el Municipio no había incluido la *Sentencia* en su presupuesto durante cinco (5) años, entre otros asuntos.

Atendidos los planteamientos y solicitudes de las partes, el TPI señaló y celebró una vista evidenciaria para dilucidar el pago de la *Sentencia.*[12] Justipreciada la prueba admitida[13] y el derecho

---

[9] Apéndice, Entradas 28 y 29 SUMAC.
[10] Apéndice, Entrada 30 SUMAC.
[11] Apéndice, Entrada 35 SUMAC.
[12] Apéndice, Entrada 42 SUMAC.
[13] Testificaron el Sr. Luis Sierra Salgado Director de Finanzas del Municipio y el Lic. Aníbal José Torres, Administrador de la Ciudad de Dorado.

aplicable, el TPI ordenó al Municipio a pagar la suma de $150,000.00 más intereses legales aplicables al gobierno, ascendientes a $22,687.50 para un total de $172,687.50 dentro de los próximos quince (15) días.[14]

Insatisfecho, el Municipio acude ante nos y señala lo siguiente:

> Erró el Tribunal de Primera Instancia al ordenar al Municipio de Dorado a pagar la suma de $150,000.00 más intereses legales ascendientes a $22,687.50 para un total de $172,687.50 dentro de un término de quince (15) días, el cual vence el día de mañana, 17 de junio de 2025, en vista de que, al así actuar, rechazó por completo la aplicación del plan de pago de sentencia que había sido debidamente evaluado y aprobado por el Departamento de Justicia del Gobierno de Puerto Rico.

Junto a su recurso, la parte Peticionaria presentó una *Solicitud Urgente de Orden de Paralización en Auxilio de Jurisdicción.* Evaluada la petición (asignada mediante el sistema SUMAC del Tribunal de Apelaciones el 17 de junio de 2025) ordenamos a la parte Recurrida a presentar su posición. Además, requerimos al foro primario remitir el enlace de la regrabación de la vista celebrada el 20 de mayo de 2025. En cumplimiento, el señor Montañez Nieves presentó su *Moción en Oposición a Moción de Solicitud Urgente de Paralización en Auxilio de Jurisdicción.*[15] En esencia, arguye que, ante el hecho innegable de que el Municipio incumplió con las disposiciones de la Ley 66-2014 y del Código Municipal, lo que procede es que se deniegue la expedición del auto de *certiorari* y la solicitud en auxilio de jurisdicción.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. Expedición de la Petición de *Certiorari* Post Sentencia

---

[14] Apéndice, Entrada 2 SUMAC.
[15] Entrada 6 SUMAC.

Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones, mediante auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023). El recurso de *certiorari* es un auto procesal extraordinario, por el cual, un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez, supra*.

Las Reglas de Procedimiento Civil establecen que, el Tribunal de Apelaciones expedirá el recurso de *certiorari,* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez, supra.* En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que, pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163 (2020). El delimitar la revisión, a instancias específicas, tiene como propósito evitar la dilación que causaría la revisión judicial de controversias, que, pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486 (2019).[16]

Ahora bien, la Regla 52.1 de Procedimiento Civil de 2009, *supra*, establece excepciones que permiten la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5)

---

[16] Citando a *Mun. de Caguas v. JRO Construction*, supra; *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2017) (cita depurada).

asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia. *800 Ponce de León v. AIG*, supra; *Scotiabank v. ZAF Corp.*, et al., *supra.*

Como puede observarse, la Regla citada no contempla los dictámenes posteriores a la sentencia, por lo que, al determinar si procede la expedición de una petición de *certiorari*, el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 213 DPR 314, 336 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). De imponerse las limitaciones de la Regla 52.1, *supra*, a la revisión de dictámenes post sentencia, tales determinaciones inevitablemente quedarían sin posibilidad alguna de revisión apelativa. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* supra*.* En tal sentido, es preciso enfatizar que, si bien el auto de *certiorari* es un mecanismo procesal discrecional, dicha discreción del foro revisor no debe hacer abstracción del resto del derecho. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019).

Cabe destacar que, el examen que hace este Tribunal, previo a expedir un *certiorari,* no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra.* Véase, además, *Mun. de Caguas v. JRO Construction, supra.* A fin de que, este Tribunal pueda ejercer su discreción de manera prudente, la Regla 40 del Reglamento de Apelaciones, *supra*, R. 40, establece los criterios que deberán ser considerados, al determinar si procede o no expedir un auto de *certiorari*.[17] Los referidos criterios establecidos en la citada Regla 40 son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[17] Véase, *Mun. de Caguas v. JRO Construction, supra,* pág. 712.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Como ya indicamos, los criterios antes transcritos, nos sirven de guía para poder determinar si procede o no intervenir en el caso, en la etapa del procedimiento en que este se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De esta manera, el foro apelativo deberá ejercer su facultad revisora, solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros, supra.*

### III.

En su recurso, el peticionario solicita que ejerzamos nuestra facultad revisora para dejar sin efecto la *Resolución y Orden* que el foro primario notificó, el 2 de junio de 2025. Hemos examinado minuciosamente el recurso ante nos y determinamos no expedir el auto del *certiorari* solicitado.

De una lectura del dictamen recurrido surge que, luego de consignar que, según estipulado, el presupuesto del Municipio para el año fiscal 2025 tiene un superávit de $5,200,000, el TPI concluyó que se prohíbe a los municipios que operan en superávit a acogerse a los beneficios de un plan de pago, conforme lo establecido en el *Código Municipal de Puerto Rico*, Ley Núm. 107 de 13 de agosto de 2020, así como, la Ley 66-2014, conocida como *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre*

*Asociado de Puerto Rico*, 3 LPRA sec. 9141. En cuanto al término que tienen los municipios para acogerse a un plan de pago, conforme dispone el Código Municipal de Puerto Rico, *supra,* así como la Ley 66-2014, *supra,* el foro primario destacó lo siguiente:

> [...]La Ley 66-2014, *supra* dispone en su Art. 28 (j): El proceso sobre planes de pago establecidos en este Artículo se solicitará una vez la sentencia advenga final y firme y no será necesario para su ejecución que el Estado Libre Asociado sus agencias, instrumentalidades, o corporaciones públicas y los municipios lo hayan alegado como defensa afirmativa en el proceso judicial.
>
> Por su parte el Art. 1.1018-A del Código Municipal, *supra*, dispone lo siguiente: El proceso sobre planes de pago establecidos en este Artículo se solicitará **dentro del término de noventa (90) días** desde que la sentencia advenga final y firme y no será necesario que el municipio lo haya alegado como defensa afirmativa en el proceso judicial. (Énfasis en el original.)

Asimismo, el foro primario abundó en su pronunciamiento sobre la apreciación que le mereció la prueba admitida ante su consideración. A esos efectos, resaltó lo siguiente:

> Queda claro que el Municipio de Dorado incumplió con las disposiciones de ambas fuentes de ley arriba mencionadas. Si acogemos la postura de los demandantes en cuanto a la aplicabilidad de la Ley 66-2014 sobre el Código Municipal; el Municipio de Dorado debió haber solicitado acogerse al plan de pago promulgado en el inciso (b) del Artículo 28 "una vez" advino la Sentencia final y firme, o sea para el 11 de abril de 2020. Si acogemos la postura del Municipio de Dorado sobre la aplicabilidad del Código Municipal, éste tenía la obligación de comenzar el trámite de gestionar el plan de pago "dentro de (90) días después de haber recaído final y firme la Sentencia" o, sea para julio de 2020. En ninguno de los escenarios anteriores se hizo. No fue hasta enero de 2025, ósea cinco (5) años más tarde, que se hicieron los trámites para solicitarlo.[18]
>
> [...]
>
> Coincidimos además con los demandantes que el incumplimiento del Municipio de incluir en sus presupuestos del 2021, 2022, 2023 y 2024 la Sentencia ha causado un retraso injustificado del remedio adjudicado por este Tribunal a los demandantes a raíz de la muerte de su hijo hace más de quince (15) años. El tribunal entiende que habiendo un superávit de $5,200,000.00 para este próximo año fiscal; el pago de la presente Sentencia no pone en riesgo la capacidad del Municipio de Dorado de asegurar el recogido de la basura, el mantenimiento de las carreteras, ni la continuidad de los servicios de emergencia y de salud de su ciudadanía cuando la realidad es que estos ya están presupuestados.

---

[18] Conforme surge del tracto procesal, cabe señalar que, el mandato correspondiente a la causa fue expedido el 4 de agosto de 2022, sin embargo, lo antes no altera el análisis objeto del presente recurso.

[...]

Al entender sobre la presente causa, no identificamos criterio alguno que nos obligue a ejercer nuestra discreción para revertir el dictamen impugnado. Además, la parte Peticionaria tampoco nos ha puesto en posición para determinar que al ejercer sus facultades judiciales y exponer sus fundamentos, el TPI haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. En su consecuencia, lo razonable es abstenernos de ejercer nuestra función revisora. Al amparo de los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, tampoco identificamos fundamento alguno que justifique la expedición del auto de *certiorari,* en aras de evitar un fracaso a la justicia.

**IV.**

Por todo lo anterior, declaramos No Ha Lugar la *Solicitud Urgente de Orden de Paralización en Auxilio de Jurisdicción* y denegamos la expedición del auto de *certiorari* según presentado.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones